BERTHA ELIZABETH SCHEUPLEIN, GUARDIAN AD LITEM
OF EDWARD JOSEPH SCHEUPLEIN, AN INFANT, AND
BERTHA ELIZABETH SCHEUPLEIN, PLAINTIFFS, v.
ERNEST GEORGE SCHEUPLEIN AND MARY M. SCHEU-
PLEIN, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided April 16, 1952.

*Mr. Harry J. Diamond,* attorney for the plaintiffs.

*Mr. Constantine Donato,* attorney for defendant Mary M. Scheuplein.

GOLDMANN, J. S. C.   Defendant Mary M. Scheuplein (hereinafter referred to as "Mary") moves to dismiss the complaint filed by Bertha Elizabeth Scheuplein (hereinafter referred to as "Bertha"), individually and as guardian *ad litem* of her son, Edward Joseph Scheuplein ("Edward"), now over 18 years old.   Plaintiffs are Connecticut residents. The defendants are the moving party and her husband, Ernest George Scheuplein ("Ernest").   The following facts appear from the complaint and affidavits:

Plaintiff Bertha married defendant Ernest on May 17, 1932.   Edward, born soon after, is the only son of the marriage.   Bertha and Ernest moved to Florida in 1940; Ernest continued to reside there until August, 1942, and Bertha until June, 1943.   In January, 1943, Bertha instituted proceedings in Florida against her husband Ernest for an absolute divorce.   The final decree in her favor was entered April 12, 1943.   It made no provision for payment of alimony, or for the support, maintenance or custody of the infant, Edward.   The final decree provided that the Florida court "retains jurisdiction insofar as custody of said minor child may arise."   The decree has never been appealed, no further action has ever been taken thereunder by plaintiff, and it remains in all respects unimpeached.

In January, 1946, Bertha filed her bill in our former Court of Chancery seeking support for her son Edward, security therefor, counsel fees and suit money.   *Docket* 155/115.   Defendant Ernest was personally served in this State.   The action was dismissed on plaintiff's motion on March 18, 1946, without prejudice.   She claims the dismissal was induced by defendant Ernest, who persuaded her to enter into an agreement, executed February 18, 1946, by whose terms custody of Edward was to remain with the

mother, with certain visitation rights in the father; the father was to pay $50 on the first of each and every month, beginning February 1, 1946, for the child's support, together with a counsel fee and costs; and plaintiff was to discontinue the pending Chancery action.

The complaint alleges that defendant Ernest made payments under the agreement until February 15, 1950, and that as of April 1, 1951, arrearages totaled $1,337.50. (Plaintiff's affidavit states the arrearages first began in 1947, allegedly due to defendant's illness, and continued for some 13 months; the last payment was March 31, 1950.)

The complaint further alleges that on May 8, 1946, defendant Ernest bought a property at 1703 Lawrenceville Road, near Trenton, title being taken in both defendants' names. (It would appear that Ernest married Mary soon after the Florida final decree was granted.) On January 3, 1951, Ernest transferred all his interest in this property to Mary for $10—the affidavit attached to the complaint shows that $5.50 in federal stamps were attached to the deed—allegedly in order to defraud plaintiff Bertha. Her affidavit explains this more fully by stating that the conveyance was to make impossible any judgment she or her son might recover against defendant Ernest. The complaint also alleges that the grantee Mary knew that such was the purpose of the conveyance.

There are two counts to the complaint. By the first, Bertha individually demands judgment for $1,337.50 arrearages under the agreement; reimbursement for $195 she spent for her son's medical and hospital bills; the setting aside of the conveyance and imposition of a lien; suitable support, both for herself and her son; discovery; issuance of a writ of sequestration against the Lawrenceville Road property and the rents and profits therefrom, and custody of Edward. By the second count, Edward, by his guardian *ad litem,* demands judgment for the stated arrears, the setting aside of the conveyance, a writ of sequestration, and discovery.

The writ of sequestration was allowed by order entered March 30, 1951, and was executed and returned by the Sheriff of Mercer County. Certified copies of the writ, summons and complaint were mailed to each defendant, registered mail, pursuant to the order. Defendant Mary then moved to quash the writ, and this was done by order entered May 16, 1951. Attached to the motion papers was Mary's affidavit stating she had married Ernest on September 26, 1943; that they bought the Lawrenceville Road property in May, 1946, and there were two mortgages thereon, requiring monthly payments of $80 and $68.17; that she and her husband moved to Florida in May, 1947, because of his poor health (the complaint gives this date as January, 1946, but counsel in his memorandum opposing the motion to dismiss uses the date January, 1947); that they then bought a house in Miami, title being in both names; that marital differences arose, so that on January 3, 1951, they made a community property settlement, she conveying all her interest in the Florida property to him in exchange for the conveyance of all his interest in the Lawrenceville Road property to her, the respective interests being valued at $5,000; that the transfers were made without intent to defraud; that she owes no legal obligation to plaintiffs, and that defendants are Florida residents.

Defendants were personally served in Miami, Florida, with the complaint, affidavits and summons by a Florida attorney on June 27, 1951, allegedly pursuant to *Rule* 3:4–5(*b*). Defendant Bertha has appeared; defendant Ernest has not, and default was taken against him August 16, 1951.

This action, then, is one by plaintiffs who have never been, or claim to have been, residents of this State, against defendants who are admittedly Florida residents. It is equally clear that the marital *res* (as between Bertha and her former husband, the defendant Ernest) was never in New Jersey; that the divorce was obtained in Florida, whose courts retain jurisdiction over the final decree which contained no provision for the support or maintenance of either Bertha or her son

Edward, or for his custody; and that Bertha holds no judgment against defendant Ernest, except for divorce, based either on the Florida proceedings or proceedings brought in any other state.

Plaintiffs at first sought to anchor this action by resorting to a writ of sequestration. The writ was quashed. Service of the complaint and summons under the order granting the writ, by sending them to defendants in Florida by registered mail, was a nullity. When defendants were personally served in Miami by a Florida attorney on June 27, 1951, the writ had no efficacy whatsoever.

Defendant's motion is based on 18 grounds, some of them merely restating in different words the essential content of others. The basic arguments are: (1) lack of jurisdiction of the subject matter and the defendants, and (2) defendant Mary was not a party to the support agreement, is a *bona fide* owner for full value of the Lawrenceville Road premises and is under no obligation to support either Bertha or the son Edward, so that no judgment can go against her or the property.

The claim for future maintenance and support for the son was abandoned in the memorandum opposing the motion. He is in the armed services and over 18. *Cf. Cohen v. Cohen,* 6 *N. J. Super.* 26, at *p.* 30 (*App. Div.* 1949).

The demand for a writ of sequestration has not been pressed since the original writ was quashed.

Custody is moot. The son has been with the mother almost since the divorce; the father has never contested and does not now contest the arrangement.

Plaintiffs' main argument in opposition to the motion is that this is essentially an action *quasi in rem*; that they seek not only to recover the arrears under the agreement but to set aside a fraudulent conveyance, and that since the property in question is located in New Jersey the court has jurisdiction.

No judgment for arrears or for disbursements made on behalf of Edward can be had against defendant Mary. She

was not a party to the agreement of February 18, 1946, and is otherwise neither legally nor morally bound to pay what is claimed to be due. And if this were an action *in personam* against defendant Ernest—and the court so considers it— it would have to fall. *Pennoyer v. Neff*, 95 *U. S.* 714 (1877). He has never been personally served, nor is such contention made.

The emphasis is upon the *quasi in rem* character of the proceedings. An action *quasi in rem* has been defined as a proceeding "against the defendant personally, although the real object is to deal with particular property." *Solomon v. Yudkin-Krell, Inc.*, 2 *N. J. Super.* 315, 318 (*Ch. Div.* 1949); *Elgart v. Mintz*, 123 *N. J. Eq.* 404, 412 (*Ch.* 1938).

The "real object" of this action is patently to collect the arrearages due under the agreement, and not to deal with the property in question. As such, it is strictly an action *in personam*. Plaintiffs seize upon the presence within the State of the Lawrenceville Road property as a basis for establishing jurisdiction. It is to be observed that this property has not been brought under the control of this court.

(Parenthetically, it is to be noted that when the February, 1946, agreement was executed, neither defendant had any interest in any New Jersey property. The premises in question were bought three months later, defendants taking as tenants by the entirety. This was no surreptitious transaction; the deed was recorded soon after, and was notice to the world during the entire period when the arrearages were accumulating. The property was, with equal openness, conveyed to defendant Mary in January, 1951, more than nine months after defendant Ernest had stopped making support payments and more than two months before plaintiffs instituted this action. Defendant Ernest did not have title when the agreement was made or when the action was brought.)

*Solomon v. Yudkin-Krell, Inc.*, above; *Cameron v. Penn Mutual Life Ins. Co.*, 111 *N. J. Eq.* 24 (*Ch.* 1932), and *Newark v. Yeskel*, 6 *N. J. Super.* 434 (*Ch. Div.* 1949), relied on by plaintiffs, are clearly distinguishable from the

case at bar. All were truly actions *quasi in rem*. In the *Solomon* case plaintiff sought to recapture rabbit skins sold to defendant foreign corporation on its false representation of solvency; the skins were still warehoused in New Jersey when the action was brought. Plaintiff in the *Cameron* case sought to reform a life insurance policy issued by defendant, a resident corporation, and the policy was within the jurisdiction of the court. In *Newark v. Yeskel* plaintiff demanded specific performance of defendant's agreement to purchase premises located in Newark and which he had bid in at a public sale held by that municipality.

Complaint cannot stand as to defendant Mary Scheuplein, who has appeared in the action. Nor can it be maintained against defendant Ernest Scheuplein, who has never been served within the State, answered or appeared. The proper forum for prosecuting such action as the plaintiffs may have is Florida, where the defendants reside, where the divorce was obtained and the decree entered.

Counsel's attention is directed to the fact that there is nothing in the file to show that plaintiff Bertha Scheuplein was ever appointed guardian *ad litem* for Edward. However, the court has considered the motion on the merits.

Costs to the moving defendant.